The STATE of Ohio, Appellee,

v.

CHERRY, Appellant.

[Cite as State v. Cherry, 171 Ohio App.3d 375, 2007-Ohio-2133.]

Court of Appeals of Ohio,
Second District, Clark County.

No. 05–CA–93.

Decided May 4, 2007.

---

**14.** (Citation omitted.) *Am. Net, Inc. v. U.S. Cover, Inc.* (2000), 243 Ga.App. 204, 209, 532 S.E.2d 756, 761.

Stephen Schumaker, Clark County Prosecuting Attorney, and William H. Lamb, Assistant Prosecuting Attorney, for appellee.

Paul M. Courtney, for appellant.

FAIN, Judge.

{¶ 1} Defendant–appellant, Adonte Cherry, appeals from his conviction and sentence on one count each of having weapons under disability, drug abuse, and receiving stolen property. Cherry contends that because he did not have control of the gun found in the car and because he was not a fugitive from justice, his conviction for having weapons under disability is both against the manifest weight of the evidence and not supported by sufficient evidence. He also points out, and the state concedes, that his cause must be remanded for resentencing pursuant to *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470. We conclude that Cherry's having-weapons-under-disability conviction is supported by sufficient evidence and that it is not against the manifest weight of the evidence, but we agree that this cause must be remanded for resentencing. Accordingly, the judgments of the conviction are affirmed, the sentence imposed by the trial court is reversed, and this cause is remanded for resentencing.

I

{¶ 2} Late one May 2005 evening, Cherry's co-defendant, Mandale Bates, burst through the back door of the home of Chad Foland, who was present with his

girlfriend, Jamie Cromwell, and the couple's children. Bates was armed with a black handgun. A second man followed Bates into the home carrying a chrome handgun. Bates stole property and hit Cromwell over the head with his gun before the two fled the house, carrying what turned out to be a red cooler, upon the sound of approaching sirens.

{¶ 3} When Bates entered the home, Foland fled through the house and out a bathroom window to get to the house next door and call the police. Foland remained on the phone watching the men moving through his home, and he heard the blow to Cromwell's head. Foland was able to advise the police of the men fleeing, and an officer saw two men get into a car near by and drive off at high speed, with the lights off. Police attempted to stop the men, but they fled. The men jumped from the moving vehicle, which ran into a ditch before coming to a stop. An officer found a black gun on the floor of the car, but no chrome gun was ever recovered. In the back seat of the car was a red cooler containing, among other things, the property taken from Foland's home, including marijuana.

{¶ 4} Cherry was indicted on one count each of aggravated burglary, having weapons under disability, drug abuse, receiving stolen property, and breaking and entering. Bates was indicted on similar charges. At trial, both Foland and Cromwell were able to identify Bates as the man who had entered their home brandishing a black gun. While Cromwell was certain that a second man armed with a chrome gun had accompanied Bates, she could not positively identify Cherry. Similarly, although Foland could see a second man from the neighbor's window, he was unable to identify Cherry as that second man.

{¶ 5} During the course of the trial, the court dismissed the breaking-and-entering charge against Cherry. The jury found Cherry guilty of having weapons under disability, drug abuse, and receiving stolen property, but not guilty of aggravated burglary. The trial court sentenced Cherry to six months for receiving stolen property, 30 months for drug abuse, and five years for the having-weapons-under-disability conviction. The felony sentences were ordered to be served consecutively, with the misdemeanor sentence to be served concurrently, for a total of seven and one-half years. Cherry appeals from his conviction for having weapons under disability and seeks remand for resentencing on the remaining convictions.

## II

{¶ 6} Cherry's first assignment of error is as follows:

{¶ 7} "The trial court erred in failing to grant defendant's motion for acquittal under Rule 29, thus the judgment should be reversed as to count two only, and judgment of acquittal on count two only entered in favor of defendant."

{¶ 8} In his first assignment of error, Cherry argues that his Crim.R. 29 motion for acquittal should have been granted because the state failed to prove that he was in control of a gun while he was fleeing from the police. For the following reasons, we disagree.

{¶ 9} Crim.R. 29(A) requires a trial court to enter a judgment of acquittal "if the evidence is insufficient to sustain a conviction of such an offense.* * *." A sufficiency-of-the-evidence argument challenges whether the state has presented adequate evidence on each element of the offense to allow the case to go to the jury or to sustain the verdict as a matter of law. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541. The proper test to apply to the inquiry is the one set forth in paragraph two of the syllabus of *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶ 10} Cherry was convicted of having weapons under disability, under R.C. 2923.13(A)(1), which states, "Unless relieved from disability * * *, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if * * * [t]he person is a fugitive from justice." Constructive possession can be sufficient to support a charge of having weapons under disability.

{¶ 11} "Constructive possession exists when an individual exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *State v. Wolery* (1976), 46 Ohio St.2d 316, 329, 75 O.O.2d 366, 348 N.E.2d 351. The evidence reveals that both Cherry and Bates were seen with guns during the invasion of Cromwell and Foland's home. When the men fled from the home, an officer saw them getting into a vehicle together, with Cherry in the front passenger seat. The car sped off at high speed with no lights, with the officer following. After Cherry and Bates abandoned the car, the officer found a gun on the floor of the front passenger side of the car, where Cherry had been sitting. Therefore, the evidence supports a finding that Cherry was in constructive possession of the gun.

{¶ 12} Because the evidence was adequate to justify sending the issue to the jury, the trial court did not err in overruling Cherry's motion for acquittal. Cherry's first assignment of error is overruled.

### III

{¶ 13} Cherry's second assignment of error is as follows:

{¶ 14} "The judgment of the trial court as to count two (weapon-under-disability) is against the weight and sufficiency of the evidence at trial."

{¶ 15} In his second assignment of error, Cherry contends that his having-weapons-under-disability conviction is not supported by sufficient evidence and that it is against the manifest weight of the evidence, because the state failed to prove that he was a fugitive from justice. We disagree in both regards.

{¶ 16} As stated above, a sufficiency argument challenges whether the state has presented enough evidence on each element of the offense to allow the charge to go to the jury. *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. On the other hand, when reviewing a judgment under a manifest weight standard of review, " 'The court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which evidence weighs heavily against the conviction.' " Id. at 387, 678 N.E.2d 541, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717.

{¶ 17} Cherry insists that he was not a fugitive from justice within the meaning of R.C. 2923.13(A)(1). The state's position is that because Cherry was a suspect of a crime who was fleeing from the police, he was a fugitive from justice within the meaning of the statute.

{¶ 18} We have found no statutory definition of the term "fugitive from justice" in Ohio law as applied to R.C. 2923.13(A)(1). However, guidance can be found in the context of extradition laws. The term "fugitive from justice" has been addressed by the United States Supreme Court in the context of state extradition laws conforming to Section 2, Article IV of the United States Constitution. *Appleyard v. Massachusetts* (1906), 203 U.S. 222, 27 S.Ct. 122, 51 L.Ed. 161. Similarly, Ohio case law, including at least one case from this court, has addressed the term in the context of extradition cases. See, e.g., *State ex rel. Bentley v. Wilson* (April 6, 1983), Montgomery App. Nos. 7903 and 7904, citing *In re Rowe* (1981), 67 Ohio St.2d 115, 119, 21 O.O.3d 73, 423 N.E.2d 167.

{¶ 19} "A fugitive from justice is a person who (1) is suspected of or has been convicted of a crime; (2) is sought by the jurisdiction so that it may subject the person to its criminal justice system, and (3) has left the jurisdiction and is found within the boundaries of another.  * * * [A]ll that is necessary to convert a state criminal into a fugitive from justice is that he left the state after having incurred

guilt there." *State v. Adkins* (1992), 80 Ohio App.3d 817, 821, 610 N.E.2d 1143, citing *Gee v. Kansas* (C.A.10, 1990), 912 F.2d 414, 418; see also *Roberts v. Reilly* (1885), 116 U.S. 80, 97, 6 S.Ct. 291, 29 L.Ed. 544.

{¶ 20} As noted in *State v. Adkins:* "Guilt, itself, is not tried on habeas corpus [challenging a governor's extradition order]." That is presumably because the issue of guilt will be decided in the receiving state after the suspect is extradited.

■ {¶ 21} In the context of the having-weapons-under-disability statute, whether a defendant "incurred guilt," as a result of which he became a fugitive from justice, is merged into the issue for trial. In our view, in the absence of an arrest warrant, the broadest reach of the statute consistent with a strict construction in favor of the accused is that the alleged fugitive from justice must: (1) have incurred guilt—i.e., be guilty of having committed some offense; (2) be aware that he is being sought by police in connection with that offense; and (3) being aware that he is being sought by police, take some affirmative action to elude detection by police. The confluence of these three elements would serve as notice to the individual that he has become, or is becoming, a fugitive from justice, thereby working a statutory disability upon the right that he would otherwise have to bear a firearm.

■ {¶ 22} Upon the facts in this record, we have little difficulty in finding sufficient proof of elements 2 and 3. It should have been clear to Cherry and Bates that the police urgently wanted to talk to them, and their acts of fleeing in a car at high speed, with no lights on, and then taking off in different directions on foot, are more than sufficient to constitute affirmative action to elude the police.

{¶ 23} As to the first element, it is clear from the record that the police wanted to talk to the occupants of the car about the home invasion that preceded the car chase. Cherry was acquitted of the aggravated burglary count comprising the home invasion. But he was convicted of receiving stolen property, and the property forming the basis for this charge was property stolen from the home. We conclude, therefore, that the police wanted to question Cherry in connection with an offense, receiving stolen property, that he had committed, that Cherry was bound to know that he was being sought for questioning about that offense, and that, aware that the police wanted to question him about this offense, Cherry took affirmative steps to elude the police.

{¶ 24} (As it happens, the drugs forming the basis for the possession of drugs charge of which Cherry was also convicted were also taken during the home invasion that the police were investigating. But while the police were pursuing Cherry, they did not know that illegal drugs were involved. Therefore, we

cannot say that Cherry was being sought for questioning concerning possession of drugs.)

{¶ 25} Because we conclude that there is evidence in the record from which it can be found that Cherry was a fugitive from justice, his having-weapons-under-disability conviction is supported by sufficient evidence. Additionally, this is not one of those rare cases in which the jury clearly lost its way in finding Cherry guilty. Accordingly, Cherry's conviction is not against the manifest weight of the evidence. Cherry's second assignment of error is overruled.

## IV

{¶ 26} Cherry's third assignment of error is as follows:

{¶ 27} "Appellant's sentence on counts two and three violated his Sixth Amendment right to trial by jury."

{¶ 28} In his third assignment of error, Cherry maintains that his case must be remanded to the trial court for resentencing because he was given maximum, consecutive sentences. The state concedes that a remand is appropriate pursuant to *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470. We agree. Cherry's third assignment of error is sustained.

## V

{¶ 29} Cherry's first and second assignments of error having been overruled, and his third assignment of error having been sustained, his conviction for having weapons under disability is affirmed, the sentence imposed by the trial court is reversed, and this cause is remanded for resentencing in accordance with *State v. Foster*.

Judgment accordingly.

WOLFF, P.J., and WALTERS, J., concur.

SUMNER E. WALTERS, J., retired, of the Third Appellate District, sitting by assignment.