OPINION
{¶ 1} Defendant-appellant Shawn Musgrove appeals from his conviction on one count of Domestic Violence, with two prior Domestic Violence convictions, which elevated the charge to a felony of the third degree . Following a jury trial, Shawn was *Page 2 
convicted and sentenced to three years in prison.[1]
 {¶ 2} Shawn contends that the trial court erred in overruling his request to admit excerpts of recorded phone calls between Shawn and the alleged victim, and in overruling a pre-trial motion for disclosure of testimony from the grand jury proceedings. Shawn also contends that his conviction is based on insufficient evidence and is against the manifest weight of the evidence.
 {¶ 3} We conclude that the proposed excerpts of the telephone calls were admissible, but the failure to admit the evidence was harmless error. We further conclude that the trial court did not err in refusing to disclose grand jury testimony, because the defense failed to establish a particularized need for the testimony that would outweigh the need for secrecy of grand jury proceedings. Finally, the conviction is not based on insufficient evidence and is not against the manifest weight of the evidence. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 4} On the morning of May 22, 2006, Shawn Musgrove and his fiancée, Tina Pauer (now Tina Musgrove), were involved in an altercation at an artist studio Tina had rented on East Second Street, in the City of Dayton. Tina called the City of Dayton Police Department, claiming that she had been the victim of domestic violence. Tina *Page 3 
also tried to call Shawn's probation officer that day, but he was not available. As a result, Tina spoke with the probation officer's supervisor, and alleged that Shawn had committed domestic violence.
 {¶ 5} Dayton Police Officer Ron Christoffers responded to the domestic violence call, but Tina was no longer at the studio — she was at the home of friends. Christoffers went to that address and spoke with Tina, but Shawn was not present. Christoffers observed a cut on Tina's lip and took a picture of it. He described it as a split or "busted" lip, and it was slightly swollen. Based on his conversation with Tina, Christoffers made efforts to locate Shawn and to have him arrested for Domestic Violence.
 {¶ 6} According to Christoffers, Tina was calm while speaking with him, until her cell phone rang. She then became highly agitated and upset and began pacing, trying to get off the phone. Tina appeared to be scared. After Tina hung up the phone, she signed a written complaint, which she quoted at trial as follows:
 {¶ 7} "Shawn came home to me and I refused. He became enraged and began throwing furniture and art supplies. We had a very loud, verbal argument and he grabbed me by the throat and squeezed. I called him a bitch and he hit me in the mouth, then dared me to do it again. I told him I would call police. He squeezed harder and then said he'd kill me and then in quotation marks `strangle your bitch ass to death.' Later by phone he threatened me again to kill me and take Chloe to Mexico." Trial Transcript, p. 339.
 {¶ 8} Shawn was subsequently arrested at a bar called "Ned Peppers" that he *Page 4 
and Tina frequented, and he was taken to jail. While in jail, Shawn called Tina's cell phone 1,268 times between May 22, 2006, and June 22, 2006, or an average of about 42 times per day. The jail records every outgoing call and maintains a log of the calls. Each call is accompanied by a warning that the call is being recorded, so there is no expectation of privacy.
 {¶ 9} At trial, the State played excerpts from three calls between Shawn and Tina. Two calls were made the day of the arrest, and one occurred two days later, on May 24, 2006. During these calls, Shawn admitted that he hit Tina and that he was at fault. Although the defense objected to introduction of the taped excerpts, the trial court overruled the objection. The defense later asked the court to play four additional excerpts to the jury that would allegedly explain the context of the conversations. However, the court refused, finding that the statements were hearsay and were therefore not admissible.
 {¶ 10} Defense witnesses in the case included Shawn, Tina, and Tina's psychologist. Shawn testified that he and Tina had spent the evening before the incident at Ned Peppers. They had been separated since February, 2006, and had reconciled about a week earlier. They were also the parents of a very young daughter, named Chloe.
 {¶ 11} Tina drank quite heavily at the bar that evening and had nine or ten doubles of Crown Royal, while Shawn had only two or three "mini-pitchers" of beer. They left the bar around 2:30 a.m., and went to a friend's house, where Tina ingested a chocolate containing a psychedelic mushroom. Shawn and Tina then arrived back at *Page 5 
the studio around 6:00 a.m., made love, had a few more beers, and fell asleep. Tina was awakened by the alarm around 8:00 a.m., and then woke Shawn up around 8:30 a.m. so that he could go to work. At this point, Tina learned that Shawn had been fired from his job. An argument ensued, in which Shawn claimed that Tina was the aggressor. Tina smacked Shawn, but he brushed it off and took a shower. When Shawn got out of the shower, he kissed the back of Tina's neck, and she struck him again. They continued to argue, so Shawn decided to leave after getting dressed, but Tina hit him two more times. Shawn eventually climbed out the window of the studio because Tina would not let him leave and the studio had only one door. However, he came back in because the studio was on the second floor and he was worried that he would fall.
 {¶ 12} After Shawn came back into the studio, Tina threw a bottle of pills at him and then punched him in the eye. When Shawn grabbed Tina's wrists to sit her down so that she would stop, Tina kicked him in the groin. While Shawn was doubled over, Tina came toward him, and he thought she was going to hit him again. Shawn quickly moved and his elbow hit Tina's lip. When Shawn ran to get his jacket, Tina threw a baby chair, hitting him in the elbow. Shawn told Tina that he thought his elbow was broken and that he needed to go to the hospital. He also threatened to call the police. At this point, Tina grabbed her keys and cell phone from the microwave. During a struggle over the phone, Tina gouged Shawn's face with the keys, and the cell phone accidentally hit Tina in the lip.
 {¶ 13} Shawn grabbed his jacket and ran out the door. Ultimately, Tina followed *Page 6 
him outside and Shawn got in the car with her. They continued to quarrel and Shawn jumped out of the car. Shawn testified that he would have called the police, but he had no telephone. Shawn then walked up the street and called Tina from a pay phone. He eventually ended up at Ned Peppers, where they had agreed to meet. However, Tina did not show up and Shawn was at the bar, drinking a mini-pitcher, when the police arrested him.
 {¶ 14} Tina testified for the defense and offered testimony contradicting her written statement and telephone calls to the police and probation officer the day of the incident. Tina told essentially the same story that Shawn had, claiming she had been the aggressor in the fight. Tina testified that Shawn did not do anything except defend himself and did not attempt to hurt her. She explained her calls and statements to the police as a pre-emptive strike to keep herself out of trouble or to avoid being arrested.
 {¶ 15} Tina claimed that she was still intoxicated from the night before and had also visited Ned Peppers the morning after the incident, where she consumed three more doubles of Crown Royal. Consequently, Tina claimed that she could recall nothing about her call to the police, about the statements she made to the police, or, indeed, about anything else that happened that day until after she woke up in the late afternoon at her friends' home.
 {¶ 16} Tina's psychologist, Dr. Blair, testified that Tina suffered from obsessive-compulsive disorder, Tourette's Syndrome, post-traumatic stress disorder, and a major depressive disorder. On rebuttal, a retired supervisor of the police department domestic violence unit and certified domestic violence instructor testified regarding the high rate *Page 7 
(85%) of domestic violence victims who refuse to testify or who change their stories about what happened. The supervisor testified that the State is entitled to proceed without the alleged victim's cooperation.
 {¶ 17} After hearing the testimony, the jury convicted Shawn of Domestic Violence, and the trial court imposed a three-year term in prison. Shawn appeals from his conviction.
 II {¶ 18} Shawn's First Assignment of Error is as follows:
 {¶ 19} "THE TRIAL COURT ERRED BY OVERRULING APPELLANT'S REQUEST TO USE EVIDENCE."
 {¶ 20} Under this assignment of error, Shawn contends that the trial court erred in refusing to admit several additional excerpts from the recorded conversations between Shawn and Tina. Shawn argues that the State's evidence was taken completely out of context, to his detriment, and that if the jury had heard other excerpts, it may have drawn a different conclusion about the nature of the conversations.
 {¶ 21} With regard to recorded statements, Evid. R. 106 provides that when a party introduces a writing or recorded statement, "an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which is otherwise admissible and which ought in fairness to be considered contemporaneously with it." In rejecting the evidence, the trial court found that the defense excerpts were hearsay and were, not "otherwise admissible" under Evid. R. *Page 8 
106.
 {¶ 22} Because the decision often involves the weighing of competing considerations, as a general rule, "admission or exclusion of relevant evidence rests within the sound discretion of the trial court."State v. Haines, 112 Ohio St.3d 393, 402-403, 2006-Ohio-6711,860 N.E.2d 91, at ¶ 50. We review evidentiary decisions for abuse of discretion, which means that the trial court must have acted arbitrarily, unreasonably or unconscionably. Decisions are unreasonable, however, if they lack a sound reasoning process. AAAA Enterprises, Inc. v. RiverPlace Community Urban Redevelopment Corp. (1990), 50 Ohio St.3d 157,161, 553 N.E.2d 597.
 {¶ 23} Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid. R. 801(C). Generally, hearsay is not admissible except as authorized by constitution, statute, or rules prescribed by the Ohio Supreme Court. Evid. R. 802.
 {¶ 24} As we noted, the State offered excerpts of phone calls in which Shawn admitted that he had hit Tina and was at fault. These excerpts were originally admitted as exceptions to the hearsay rule under Evid. R. 802(D)(2)(a), which states that admissions by a party opponent are not hearsay when offered by the opposing party. The State also included Tina's recorded statements, but the trial court cautioned the jury that Tina's statements were hearsay and were not to be considered for the truth of the matters asserted. When the defense asked the court to admit other parts of the recorded calls, the trial court refused, stating that the excerpts were hearsay and were inadmissible. *Page 9 
 {¶ 25} Shawn's recorded statements were properly offered by the State as admissions of a party opponent under Evid. R. 802(D)(2)(a), but Shawn cannot rely on this exclusion from the hearsay rule in order to have the additional excerpts admitted. Specifically, a party "`may not introduce his own statement under this rule.'" State v. Gatewood (1984),15 Ohio App.3d 14, 16, 472 N.E.2d 63, 65, quoting from 1980 Staff Notes to Evid. R. 801(D)(2)(a). Accord In re Coy, 67 Ohio St.3d 215, 218,1993-Ohio-202, 616 N.E.2d 1105, 1107.
 {¶ 26} Since the recorded statements were admittedly made out-of-court, another exception or exclusion from the hearsay rule must apply in order for the statements to be "otherwise admissible" under Evid. R. 106. After listening to the recorded excerpts that the defense offered, we conclude that they were not hearsay because they were not being offered for the truth of the matters asserted. Evid. R. 801 (C). Instead, the defense submitted the excerpts to explain why Shawn may have made admissions about being at fault. According to the defense, Shawn was motivated to confess guilt for the following reasons: (1) Tina threatened Shawn that she would go to court; (2) Children's Services had threatened to take their daughter away if Tina did not press charges; and (3) Tina threatened to change all the phone numbers and move out of state with their daughter.
 {¶ 27} We also conclude that to the extent any excerpt contained statements that were offered for the truth of the matters asserted (like Shawn's assertion that he did not do anything and that he tried to climb out the window, for example), these statements were excluded from the hearsay rule by Evid. R. 801(D)(1)(b). This rule provides, in *Page 10 
pertinent part, that:
 {¶ 28} "A statement is not hearsay if:
 {¶ 29} "(1) Prior statement by witness. The declarant testifies at trial or hearing and is subject to cross-examination concerning the statement, and the statement is * * * (b) consistent with declarant's testimony and is offered to rebut an express or implied charge against declarant of recent fabrication or improper influence or motive * * * ."
 {¶ 30} The defense offered the excerpts just before calling Shawn to the stand, so Shawn would have been subject to cross-examination. The defense was also aware that Tina had recanted and that both Tina and Shawn planned to testify that Tina was the aggressor and that Shawn had tried to escape. Further, Shawn and Tina had married after Shawn was released from jail on bond. And finally, the State had subpoenaed a rebuttal witness to testify regarding recantation by domestic violence victims. Under the circumstances, Shawn's recorded statements would have been admissible as prior consistent statements offered to rebut a charge that he and Tina had fabricated their story and had an improper motive. Compare State v. Johnson (Apr. 26, 1996), Montgomery App. No. 15253,1996 WL 200623, *3 (holding that prior consistent statements of a victim to a friend after an alleged rape were admissible as excited utterances and may also have been admissible under Evid. R. 801(D)(1)(b).Johnson also focused on trial counsel's opening statement, which indicated that the victim had fabricated a story about being raped).
 {¶ 31} As an additional matter, the defense in the present case would have been entitled to rehabilitate Shawn and Tina on re-direct examination with prior consistent *Page 11 
statements they made before trial. See, e.g., State v. Young, Montgomery App. No. 19466, 2003-Ohio-4706, at ]} 31. Thus, to the extent the statements were offered for their truth, they were still admissible.[2]
 {¶ 32} In light of the foregoing discussion, we will assume for the sake of argument that the additional excerpts were "otherwise admissible" under Evid. R. 106, and should have been admitted. Nonetheless, we find any error harmless, because a reasonable jury would have come to the same conclusion even if the evidence had been admitted. See, e.g., State v. Rutledge, Montgomery App. No. 18949, 2002-Ohio-5827, at ¶ 12, and State v. Sinkfield, Montgomery App. No. 18663, 2001-Ohio-1835, 2001 WL 1517314, *11. ("Error in the admission of evidence in criminal proceedings is harmless if there is no reasonable possibility that the evidence may have contributed to the accused's conviction. In order to hold the error harmless, the court must be able to declare a belief that the error was harmless beyond a reasonable doubt.")
 {¶ 33} The first reason any error is harmless is that the tapes are difficult to understand at times because the parties shout and repeatedly interrupt each other. To the extent the tapes could be understood, they would likely have created an unfavorable impression on the jury due to the amount of acrimonious argument and the profane language both parties used. Furthermore, most of the remarks that can be deciphered are harmful to Shawn's case or are, at best, neutral. *Page 12 
 {¶ 34} For example, Shawn's statement that Tina would not get away from him and that he tried to leave by the window was consistent with his trial testimony. But Tina denied these facts during the same conversation — which would not have been helpful to Shawn's case. Tina also stated during this excerpt that Shawn had "beat the crap" out of her and that he should see her mouth — that every time she chewed, she chewed on her lip. Again, this would not have helped Shawn's defense. And finally, as the State notes in its brief, Tina did not threaten to take their child away, or to testify, if Shawn refused to admit fault. Instead, these comments were responses to Shawn's attempts to excuse his conduct and blame Tina for the problem.
 {¶ 35} Shawn's First Assignment of Error is overruled.
 III {¶ 36} Shawn's Second Assignment of Error is as follows:
 {¶ 37} "THE TRIAL COURT ERRED BY OVERRULING APPELLANT'S PRE-TRIAL MOTION FOR DISCLOSURE/TRANSCRIPT OF THE GRAND JURY PROCEEDINGS."
 {¶ 38} Under this assignment of error, Shawn contends that the trial court erred in refusing to grant his motion to obtain a copy of the grand jury transcript. Prior to trial, Shawn requested a copy of the transcript because Tina had told wildly different versions of the incident, and Shawn anticipated that the State would use the grand jury testimony to discredit Tina's testimony. The trial court found no need for disclosure, since Tina had recanted. The court did order the State to bring a copy of the transcript to trial, and *Page 13 
noted that if the State used the transcript to impeach Tina, the court would review the transcript in camera. Appropriate portions of the transcript would then be released to the defense for use on cross-examination. However, the transcript was never released, because the State did not use the grand jury testimony for impeachment.
 {¶ 39} Release of grand jury testimony is within the discretion of the trial court. State v. Greer (1981), 66 Ohio St.2d 139, 420 N.E.2d 982,983, paragraph one of the syllabus. Because grand jury proceedings are secret, the defense must show that "a particularized need for disclosure exists which outweighs the need for secrecy." Id. at paragraph two of the syllabus. According to the Ohio Supreme Court:
 {¶ 40} "Whether particularized need for disclosure of grand jury testimony is shown is a question of fact; but, generally, it is shown where from a consideration of all the surrounding circumstances it is probable that the failure to disclose the testimony will deprive the defendant of a fair adjudication of the allegations placed in issue by the witness' trial testimony." Id. at paragraph three of the syllabus.
 {¶ 41} After reviewing the record, we conclude that the trial court did not abuse its discretion. In this regard, we note that Tina married Shawn after he was released from jail in June, 2006. Tina then recanted her complaint against Shawn. By her own admission, Tina made about fifty calls to the police, attempting to have the charges dismissed. Tina also testified for the defense at trial. Because Tina was fully cooperative with the defense, Shawn and his counsel had every opportunity to learn what Tina had said to the grand jury. More importantly, the State did not use the grand jury transcript at trial to discredit or impeach Tina. Accordingly, Shawn has failed to *Page 14 
establish a particularized need for the transcript that would outweigh the need for secrecy of the grand jury proceedings.
 {¶ 42} The Second Assignment of Error is overruled.
 IV {¶ 43} Shawn's Third Assignment of Error is as follows:
 {¶ 44} "THE TRIAL COURT ERRED IN UPHOLDING THE CONVICTION BECAUSE THERE WAS INSUFFICIENT EVIDENCE TO CONVICT DEFENDANT OF DOMESTIC VIOLENCE."
 {¶ 45} Shawn contends under this assignment of error that the State failed to prove a required element of Domestic Violence — that he knowingly caused or attempted to cause physical harm to a family member. R.C. 2919.25(A). In this regard, Shawn relies on the fact that the victim, Tina, testified at trial that she was the aggressor and that she did not believe Shawn had intentionally contacted her physically. Shawn also points out that the police failed to investigate the artist studio for physical evidence and failed to interview Shawn after his arrest.
 {¶ 46} "A suff iciency-of-the-evidence argument challenges whether the state has presented adequate evidence on each element of the offense to allow the case to go to the jury or to sustain the verdict as a matter of law. State v. Thompkins (1997), 78 Ohio St.3d 380, 387,678 N.E.2d 541. The proper test to apply to the inquiry is the one set forth in paragraph two of the syllabus of State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492: `An appellate court's function when reviewing the sufficiency of the *Page 15 
evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" State v. Cherry, 171 Ohio App.3d 375, 379,2007-Ohio-2133, 870 N.E.2d 808, 810-11, at ¶ 9.
 {¶ 47} The State presented evidence that Shawn knowingly caused or attempted to cause harm to Tina. As we have noted, Tina called the police and the probation department, claiming that Shawn had committed domestic violence. An officer responding to the call observed physical injury, as did Tina's caseworker. In addition, Shawn admitted during telephone calls from the jail that he had hit Tina and that he was at fault. Although Tina later recanted her allegations and Shawn testified that he acted in self-defense, these were credibility issues that were properly resolved by the jury. Based on the evidence the State presented, any rational trier of fact could have found the essential elements of Domestic Violence proven beyond a reasonable doubt.
 {¶ 48} Accordingly, the Third Assignment of Error is overruled.
 V {¶ 49} Shawn's Fourth Assignment of Error is as follows:
 {¶ 50} "THE TRIAL COURT ERRED BECAUSE THE CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE." *Page 16 
 {¶ 51} Under this assignment of error, Shawn's brief incorporates the arguments previously made. Relying on these arguments, Shawn contends that the conviction is against the manifest weight of the evidence. Shawn also focuses on the factors that purportedly cause many domestic violence victims to recant. Allegedly, these factors do not apply to this case, because Tina did not testify about fearing Shawn, Tina was the breadwinner and had family in the local area, and Shawn had not threatened to take their child.
 {¶ 52} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony. * * *Tibbs, 457 U.S. at 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661. See, also,State v. Martin (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219,485 N.E.2d 717, 720-721 (The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.')" State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52,678 N.E.2d 541, 546-47.
 {¶ 53} After reviewing the entire record and considering the credibility of witnesses, we conclude that the jury did not clearly lose its way and did not create a manifest miscarriage of justice. In this regard, we note that the defense version of *Page 17 
events is based solely on testimony from two witnesses, who were not credible.
 {¶ 54} We are also unpersuaded by the argument that Tina fails to fit within the characteristics of recanting domestic violence victims. To the contrary, Tina's written statement and actions on the day of the incident exhibited a significant amount of fear, and she did mention that Shawn had threatened to kill her and take their child. The evidence that Tina gave police the day of the incident, including her written statement and signs of physical injury, also provided ample grounds to support the jury's verdict. The remaining evidence — Shawn's statements, for example — added weight, but was not essential for a conviction. And finally, the testimony about self-defense is a credibility matter that the jury could reasonably decide against Shawn. As we noted, Shawn and Tina were not credible witnesses.
 {¶ 55} The Fourth Assignment of Error is overruled.
 VI {¶ 56} All of Shawn's assignments of error having been overruled, the judgment of the trial court is Affirmed.
BROGAN, J., concurs.
[1] Because Shawn Musgrove and the alleged victim in this case married prior to trial, and both now bear the last name of Musgrove, we will refer to them by their first names.
[2] We note that the recorded statements may have been offered prematurely under this theory, because neither Shawn nor Tina had yet been subjected to cross-examination.