**[Cite as *State v. Keith*, 2013-Ohio-2761.]**

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## GREENE COUNTY

STATE OF OHIO

      Plaintiff-Appellee

v.

JIMMORIE L. KEITH

      Defendant-Appellant


Appellate Case No.    2012-CA-47

Trial Court Case No.   CRB-1100761

(Criminal Appeal from
 Municipal Court)

. . . . . . . . . . .

## O P I N I O N

Rendered on the 28th day of June, 2013.

. . . . . . . . . . .

BETSY A. DEEDS, Atty. Reg. No. 0076747, Assistant Fairborn Prosecutor, 510 West Main Street, Fairborn, Ohio 45324
      Attorney for Plaintiff-Appellee

BRANDON CHARLES McCLAIN. Atty. Reg. No. 0088280, 70 Birch Alley, Suite 240, Beavercreek, Ohio 45440
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1}    Defendant-Appellant, Jimmorie Keith, appeals from his conviction and sentence on a single charge of Assault.    After the jury found Keith guilty as charged, he was sentenced to 180 days in jail, with 90 days of the time suspended.

{¶ 2}    Keith contends that the conviction was based on insufficient evidence because the prosecutor failed to prove all the elements of Assault.   Keith further contends that his conviction was against the manifest weight of the evidence.

{¶ 3}    We conclude that the State presented sufficient evidence on all essential elements of the crime of Assault.   In addition, we conclude that Keith's conviction is not against the manifest weight of the evidence.   Accordingly, the judgment of the trial court will be affirmed.

I.   Facts and Course of Proceedings

{¶ 4}    On May 10, 2010, Alicia Lear, a student at Wright State University, was returning to her apartment, which was located in a student housing complex called The Province.  As Lear pulled into the parking lot, she saw a male and female (later identified as Defendant, Jimmorie Keith, and the alleged victim, Diamond Gray), pushing and shoving each other.  Lear then saw Keith grab Gray by the arm, push her to the ground, and punch her.

{¶ 5}    After seeing these events, Lear went to her apartment and asked her roommate, Kristen Thomas, to come back with her. The two women returned to the mailbox area at the entrance to The Province, and saw Keith and Gray continuing to argue.    Lear and Thomas went inside the leasing office and were looking through the window blinds.  Lear testified that they

were afraid to get too close because Keith was being really aggressive.

**{¶ 6}** Thomas saw Keith make a punching action towards Gray, but she did not see the punch connect because of the blinds. Thomas and Lear then went to the swimming pool area and got two more friends, Megan Davidson and Whitney Trimble. When the four women walked back from the pool to the parking lot, they saw Keith and Gray by a red Grand Am car. Gray got in the car, and Keith began pulling on her and pushing her. The couple was yelling back and forth. All the women saw the car moving back and forth, and saw Keith making multiple punching motions with a closed fist. They did not see the punches connect because Gray was inside the car. None of the witnesses saw Gray punch, slap, or hit Keith (other than Lear, who had seen the couple pushing and shoving each other when she first arrived at The Province). Eventually, Keith and Gray got out of the car, walked across the street, and continued to argue.

**{¶ 7}** Davidson called the police because a woman was being assaulted. Greene County Sheriff's Deputy, Jason Davis, received a call at about 8:45 p.m. to go to The Province. When Davis arrived at the scene five to ten minutes later, he saw Keith and Gray arguing. Keith was nose-to-nose with Gray, who was visibly upset. Keith appeared to be more aggressive, and Gray was cowering.

**{¶ 8}** Davis asked Keith to step away from Gray and go to the front of the cruiser. Davis then patted Keith down for weapons. Davis asked Keith what was going on, and Keith stated that he and his "baby mama" were having a dispute over a cell phone issue.

**{¶ 9}** After briefly detaining Keith in the back of the cruiser, Davis spoke to Gray, who was very upset and was crying. Gray said that she had been on her way home from work when Keith called and asked how she had gotten his new phone number. Gray refused to tell

Keith. He then showed up and an argument ensued. Davis later verified that Gray was pregnant and that Keith was the father.

{¶ 10} Gray stated that she had received injuries when she got into Keith's car and he was trying to pull her out. Keith pulled her by the neck and shoulder areas, and also by the wrist. When she finally got out of the car, he knocked her to the ground. Deputy Davis took photographs of the injuries, which showed a fresh abrasion running down the right side of Gray's ear to about the middle of her jaw line, redness on her wrist, and redness on the side of her face, which appeared to be swollen.

{¶ 11} After arresting Keith and administering *Miranda* rights, Davis asked Keith for his side of the story. Keith indicated that he was upset because Gray had his cell phone number and would not tell him where she had gotten it. After confronting Gray on Zink Road, Keith grabbed her cell phone and drove to The Province, where Gray met up with him. Keith tried to lock Gray out of the car, but she got into the driver's side and refused to leave. Keith admitted grabbing Gray by the side of the neck and shoulder area. When Gray latched onto the steering wheel, Keith grabbed her by the wrist and yanked her out of the car.

{¶ 12} Deputy Davis testified that Keith had no signs of injuries and did not claim any injury. Keith also did not claim that Gray had hit, pushed, or punched him, nor did he say that Gray had ripped his clothing. Keith's demeanor was also highly agitated when Davis came on the scene.

{¶ 13} Gray did not appear to testify at the trial. Keith testified on his own behalf. Keith indicated that he and Gray had broken up in May 2010, and that she was five months pregnant with his child. After the break-up, Gray started repeatedly calling him on the

telephone. Gray had previously called him 173 times, and he then got a new cell phone. However, on May 10, 2010, Gray called him 274 times, after getting his new telephone number.

{¶ 14}   Keith drove over to Gray's apartment because she would not answer her phone. Keith saw Gray walking down Zink Road and pulled into The Province. He then walked toward Gray to ask how she had gotten his phone number.

{¶ 15}   At the time, Gray was talking on her cell phone. When Gray pulled her cell phone away from her ear, Keith took her phone and tried to look through it. Gray then hit him on the face twice with a closed fist. After Keith tried to block Gray's swing and grabbed her arm, Gray grabbed Keith's shirt and ripped it. As Keith tried to "tug away," Gray ended up falling on the ground.

{¶ 16}   After helping Gray up, Keith gave Gray her phone back and walked to his car. He told Gray that since she would not tell him who had given her his number, there was no need for her to call him anymore or to contact him. Gray followed him over to his car, and got in. Keith stated that he asked Gray six or seven times to get out of the car.

{¶ 17}   Keith then tried to remove Gray from the car, but denied that he was being aggressive. When Gray gripped the steering wheel, Keith started to tug a little bit. According to Keith, the car was shaking and moving because Gray was holding onto the wheel as he was tugging, and she was kicking him. Keith also stated that he accidentally scratched Gray's neck while trying to get her out of the car.

{¶ 18}   Once Gray got out of the car, Keith followed her. He had another girlfriend at the time, and Gray was really upset about it. Keith stated that he was following Gray to assure her that he was sorry for all the things that were going on and that he would be there for her and

the baby.   Keith claimed that he and Gray were actually hugging when the police arrived.

{¶ 19}   According to Keith, any contradictions between his testimony and that of the other witnesses, including Deputy Davis, were the result of the witnesses having lied.   Keith claimed that he did tell Davis that Gray had struck him, that Lear was lying when she said that she saw him push Gray down and punch her, and that the four women were all lying when they testified that he had punched Gray multiple times.

{¶ 20}   After hearing the evidence, the jury found Keith guilty of Assault, and he was sentenced accordingly.   Keith appeals from his conviction and sentence.

## II.   Is the Conviction Based on Insufficient Evidence?

{¶ 21}   Keith's First Assignment of Error states that:

Mr. Keith's Conviction Was Based upon Insufficient Evidence Presented at Trial by the Prosecution.

{¶ 22}   Under this assignment of error, Keith contends that his conviction is based on insufficient evidence because the State failed to prove the required elements of Assault.   In this regard, Keith focuses on the fact that some witnesses did not see his punches "connect" in the car, the fact that Gray did not tell Deputy Davis that she had been struck during the altercation, and the fact that Gray did not want a protection order to be brought against Keith.

{¶ 23}   "A sufficiency-of-the-evidence argument challenges whether the state has presented adequate evidence on each element of the offense to allow the case to go to the jury or to sustain the verdict as a matter of law."   *State v. Cherry*, 171 Ohio App.3d 375, 2007-Ohio-2133, 870 N.E.2d 808, ¶ 9 (2d Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380,

387, 678 N.E.2d 541 (1997). "The proper test to apply to the inquiry is the one set forth in paragraph two of the syllabus of *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492: 'An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *Cherry* at ¶ 9.

**{¶ 24}** In the case before us, Keith was charged with having violated R.C. 2903.13(A), which provides that "No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn."

**{¶ 25}** In view of the facts outlined above, any rational trier of fact could have found the elements of the crime proven beyond a reasonable doubt. One witness saw Keith push Gray to the ground and punch her; that witness, as well as three others, saw Keith making punching motions inside the car; and Deputy Davis saw visible injuries to Gray. Keith even admitted inflicting physical injuries, but claimed they were accidental. The State, thus, presented sufficient evidence that Keith knowingly caused or attempted to cause physical harm to Gray.

**{¶ 26}** Accordingly, the first assignment of error is overruled.


III.  Is the Conviction Against the Manifest Weight of the Evidence?

**{¶ 27}** Keith's Second Assignment of Error is as follows:

Mr. Keith's Conviction Was Against the Manifest Weight of the Evidence.

**{¶ 28}** Under this assignment of error, Keith contends that his conviction is against the manifest weight of the evidence because only one prosecution witness, Lear, could definitely say that she observed Keith striking Gray. Keith notes that the incident occurred at 8:45 at night, and that another witness, Davidson, testified that none of the witnesses – which would include Lear – actually saw Keith strike Gray.

**{¶ 29}** "When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Hill*, 2d Dist. Montgomery No. 25172, 2013-Ohio-717, ¶ 8, quoting *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. "A judgment should be reversed as being against the manifest weight of the evidence 'only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶ 30}** As a preliminary matter, we note that the testimony of one eye-witness, Lear, would be adequate for conviction, if the jury chose to believe her. Lear was the first witness on the scene, and testified that she saw Keith push Gray to the ground and punch her. If Keith committed these acts, he knowingly caused or attempted to cause physical harm to Gray. In this regard, we note that R.C. 2903.13(A) does not require that physical harm occur; it only requires that an individual "attempt" to cause physical harm. The act of pushing Gray to the ground and the act of punching her would both qualify as an attempt to cause physical harm.

**{¶ 31}** Furthermore, Keith is incorrect in his characterization of the testimony. Davidson did not arrive at the scene until some time after Lear saw Keith push and punch Gray. Therefore, Davidson would have not have been in a position to know what Lear had previously seen. The eye-witnesses also indicated that they had no trouble seeing the events that took place, as it was dusk when the altercation occurred. The area was also well-lit.

**{¶ 32}** In *State v. Lawson*, 2d. Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997), we noted that:

> Because the factfinder, be it the jury or, as in this case, the trial judge, has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness.

**{¶ 33}** As a result, "[t]his court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict." (Citation omitted.) *State v. Williams*, 2d Dist. Montgomery No. 20039, 2004-Ohio-1939, ¶ 14.

**{¶ 34}** The facts in the case before us do not suggest that the trier of fact lost its way in arriving at its verdict. Instead, the jury chose to believe the prosecution witnesses. This is not the exceptional case in which the evidence weighs heavily against the conviction. Accordingly, the Second Assignment of Error is overruled.

## IV.   Conclusion

**{¶ 35}**   All of Keith's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

FAIN, P.J. and FROELICH, J., concur.

Copies mailed to:

Betsy A. Deeds
Brandon Charles McClain
Hon. Beth W. Root