[Cite as *State v. Jones*, 2013-Ohio-3760.]

## IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## CLARK   COUNTY

STATE OF OHIO                                 :
                                              :      Appellate Case No. 2012-CA-95
     Plaintiff-Appellee              :
                                              :      Trial Court Case No. 2012-CR-02
v.                                            :
                                              :
TIMOTHY JONES, II                             :      (Criminal Appeal from
                                              :       Common Pleas Court)
     Defendant-Appellant             :
                                              :

. . . . . . . . . . .

O P I N I O N

Rendered on the 30th day of August, 2013.

. . . . . . . . . . .

LISA M. FANNIN, Atty. Reg. #0082337, Clark County Prosecutor's Office, 50 East Columbia Street, 4th Floor, Post Office Box 1608, Springfield, Ohio 45501
     Attorney for Plaintiff-Appellee

HAL R. ARENSTEIN, Atty. Reg. #0009999, 114 East Eighth Street, Cincinnati, Ohio 45202
     Attorney for Defendant-Appellant

. . . . . . . . . . . .

FAIN, P.J.

{¶ 1}     Defendant-appellant Timothy Jones appeals from his conviction and sentence for Gross Sexual Imposition.  In his sole assignment of error, Jones contends that the conviction is against the manifest weight of the evidence.

{¶ 2}    We conclude that the conviction is not against the manifest weight of the evidence.   Accordingly, the judgment of the trial court is Affirmed.


**I.   While Staying the Night at her Sister's Home, M.T., a Minor,**

**Has Three Encounters During the Night with her Sister's Boyfriend**

{¶ 3}    In November 2011, M.T. spent the night with her sister, S.M., at her sister's residence.   At that time, M.T. was fourteen.   At about 10:30, Jones, who resided with S.M., returned home.   Jones, S.M. and M.T. ate dinner and then went to bed.   Jones and S.M. went to bed in the bedroom; M.T. went to sleep on the living room couch.

{¶ 4}    M.T. woke up during the night because she "felt like something touched or crossed by [her] lower stomach."   She observed Jones walking past her.   Jones asked her whether she wanted the pillow.   She responded affirmatively, retrieved the pillow and went back to sleep.

{¶ 5}    M.T. awakened later while lying on her stomach, with her jacket pushed up, when she "felt something on [her] lower back."   Again, she observed Jones walking by her, and again he asked her if she wanted a pillow.   He also asked her whether she wanted the bathroom light on or off.   M.T. ended up falling back to sleep.

{¶ 6}    M.T. was awakened a third time that night:

Q.   And there was another occasion that again caused you to awaken from your sleep?

A.   Yeah, I felt like my pants were like lower, my pajama pants.   And it was like right underneath my butt; and I felt something wet on my back and, like, splash my butt.   And that time I was facing towards the wall; and I turned around

and [Jones] was right there between the couch and the coffee table and, like, kneeling there. And I got up and just ran to my sister's room.

A. Okay. I want to take you back now, okay, and I'm gonna have to ask you a few questions about this incident. When you say you felt, you say your pants were down, can you explain to the Judge what you mean your pants were down and where they were at.

A. Like they were just like down like right below my butt, but just like the back part of my pajama pants. It was like my front part of my pajama pants.

Q. And you described too like you were into the couch. So your face would have been into the couch and your buttocks area would have been away from the couch. Is that right?

A. Yes.

Q. The pajama pants that you were wearing, have you ever experienced them coming down your buttocks on your own?

A. No.

Q. How far were they down onto your buttocks?

A. Like a little bit over – like a little bit more than over halfway down my butt.

Q. Okay. And you said at this time you said you felt something wet.

A. Um-hmm.

Q. Was it in that same area that your pants were pulled down that you felt something wet?

A. Yes.

Q. Would that have been including on your butt?

A. Um-hmm.

{¶ 7}   M.T., her sister, and S.M.'s child left the residence and went to their grandmother's residence.   M.T.'s mother was present and noticed a dried white substance which she identified as sperm on her daughter's lower back and butt.   Forensic testing showed that the semen obtained from M.T.'s bikini briefs was positive for   Jones's DNA.

{¶ 8}   Jones was subsequently indicted on one count of Gross Sexual Imposition in violation of R.C. 2907.05(A)(5).   Jones was convicted, following a bench trial, and was sentenced accordingly.   From his conviction and sentence, Jones appeals.

**II.   The Trial Court's Finding that Jones Had Sexual Contact**

**with M.T. Is Not Against the Manifest Weight of the Evidence**

{¶ 9}   Jones' sole assignment of error states:

THE FINDING OF GUILT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE BECAUSE THERE WAS NO EVIDENCE OF SEXUAL CONTACT AS DEFINED IN ORC § 2907.01 BETWEEN APPELLANT AND THE ALLEGED VICTIM.

{¶ 10}   Jones argues that the State failed to produce evidence of sexual contact between himself and M.T., and thus, the conviction is against the manifest weight of the evidence. Specifically, he contends that there is no evidence that he touched or made any physical contact with M.T.

{¶ 11} While Jones styles his argument as a manifest-weight argument, he actually contends that the evidence in the record is insufficient to support his conviction, because he contends that the State failed to present evidence of sexual contact, an element of the crime of Gross Sexual Imposition.

{¶ 12} "A sufficiency-of-the-evidence argument challenges whether the state has presented adequate evidence on each element of the offense to allow the case to go to the jury or to sustain the verdict as a matter of law." *State v. Cherry,* 171 Ohio App.3d 375, 2007-Ohio-2133, 870 N.E.2d 808, ¶ 9 (2d Dist.). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 13} "When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Hill,* 2d Dist. Montgomery No. 25172, 2013-Ohio-717, ¶ 8, quoting *State v. Thompkins,* 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). "A judgment should be reversed as being against the manifest weight of the evidence 'only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Hill* at ¶ 8, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st

Dist.1983).

{¶ 14}  Gross Sexual Imposition (GSI) is proscribed by R.C. 2907.05.  That statute provides, in relevant part, as follows:

> (A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
>
> * * *
>
> (5) The ability of the other person to resist or consent or the ability of one of the other persons to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the ability to resist or consent of the other person or of one of the other persons is substantially impaired because of a mental or physical condition or because of advanced age.

{¶ 15}  " 'Sexual contact' means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."  R.C. 2907.01(B).

{¶ 16}  "Touching" is not defined in Chapter 29 of the Ohio Revised Code. "Touch" is defined as "to bring a bodily part into contact with esp. so as to perceive through the tactile sense."  *Webster's Ninth New Collegiate Dictionary* 1246 (1988).

{¶ 17}  M.T. did not feel any contact with a proscribed part of her body during the first

two times she awakened. The testimony regarding the third contact, was that M.T. awoke with her pajama bottoms pulled half-way down her buttocks. She then felt a wet substance on her lower back and on her buttocks. She did not testify that Jones touched her.

{¶ 18} The State argues that "three different arguments can be made as to how Jones is guilty of gross sexual imposition." First, the State claims that the mere fact that Jones ejaculated onto M.T. is enough to satisfy the element of touching. Second, the State contends that it can be inferred that "Jones' penis actually touched M.T.'s buttocks and lower back area while he was ejaculating on her or prior to his gratification." Finally, the State argues that "there was enough circumstantial evidence to determine that Jones pulled down M.T.'s pajama pants and was aroused and gratified."

{¶ 19} We agree with the State's final argument; therefore, we need not address its first and second arguments.

{¶ 20} In cases of GSI involving force, courts have held that when a person awakens with their clothing removed, a reasonable inference arises that force was used to facilitate sexual contact. *See State v. Bradley*, 8th Dist. Cuyahoga No. 98216, 2013-Ohio-485, ¶ 20-24; *State v. Burton*, 4th Dist. Gallia No. 05CA3, 2007-Ohio-1660, ¶ 48. In both of those cases, there was evidence in the record that the defendant actually touched the victim in an erogenous zone; it was the separate element of force that was established inferentially through the fact that the sleeping victim's clothing had been removed.

{¶ 21} Sexual contact does not require that the offender have skin-to-skin contact with an erogenous zone of the victim; a touching of an erogenous zone covered by the victim's clothing is sufficient. *In re A.L.*, 12th Dist. Butler No. CA2005-12-520, 2006-Ohio-4329, ¶ 23,

fn. 1.

{¶ 22}   In the case before us, the victim testified that when she awakened the third time, her pajama bottoms were pulled halfway down her buttocks.  She also testified that she had never had this happen before while she was sleeping.   From this testimony, we conclude that the trial court, as finder of fact, could reasonably infer, beyond reasonable doubt, that Jones pulled M.T.'s pajama bottoms halfway down her buttocks, touching her buttocks, either directly, or through the pajama bottoms, while doing so.  This was a touching of M.T.'s buttocks, an erogenous zone.

{¶ 23}   From the fact that Jones ejaculated onto M.T.'s lower back, the trial court could reasonably infer, beyond reasonable doubt, that Jones touched her buttocks for the purpose of sexually arousing himself, sexually gratifying himself, or both.   Thus, the trial court could find that Jones had sexual contact with his victim, and was guilty of Gross Sexual Imposition.

{¶ 24}   Jones's sole assignment of error is overruled.

### III.   CONCLUSION

{¶ 25}   Jones's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

DONOVAN and FROELICH, JJ., concur.

Copies mailed to:

Lisa M. Fannin
Hal R. Arenstein
Hon. Richard J. O'Neill