OPINION
{¶ 1} Defendant, Terrell Mabry, appeals from his conviction and sentence for possession of crack cocaine and possession of criminal tools.
 {¶ 2} On March 2, 2005, Dayton police executed a narcotics search warrant at 34 Hatfield Drive, Apartment C., in Dayton. Police discovered crack cocaine in various places, including *Page 2 
some in the mailbox outside and some on a plate on top of a microwave. Defendant's fingerprints were later found on that plate. Police also discovered guns, money, digital scales, and paperwork linking Defendant to that apartment.
 {¶ 3} On March 10, 2005, Defendant was indicted on one count of possession of crack cocaine, over twenty-five but less than one hundred grams, R.C. 2925.11(A), and one count of possession of criminal tools, R.C. 2923.24(A). Defendant was found guilty of both offenses following a jury trial. The trial court sentenced Defendant to concurrent mandatory prison terms of four years for possession of cocaine and nine months for possession of criminal tools.
 {¶ 4} Defendant timely appealed to this court from his conviction and sentence.
FIRST ASSIGNMENT OF ERROR
 {¶ 5} "WHETHER THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WHETHER THERE WAS SUFFICIENT EVIDENCE TO CONVICT."
 {¶ 6} A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52. The proper test to apply to *Page 3 
such an inquiry is the one set forth in paragraph two of the syllabus of State v. Jenks (1991), 61 Ohio St.3d 259:
 {¶ 7} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
 {¶ 8} A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive. State v. Hufnagle
(Sept. 6, 1996), Montgomery App. No. 15563, unreported. The proper test to apply to that inquiry is the one set forth in State v. Martin
(1983), 20 Ohio App.3d 172, 175:
 {¶ 9} "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction *Page 4 
must be reversed and a new trial ordered." Accord: State v. Thompkins,supra.
 {¶ 10} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve.State v. DeHass (1967), 10 Ohio St.2d 230. In State v. Lawson
(August 22, 1997), Montgomery App. No. 16288, we observed:
 {¶ 11} "[b]ecause the factfinder . . . has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." Id., at p. 4.
 {¶ 12} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict. State v. Bradley (Oct. 24, 1997), Champaign App. No. 97-CA-03.
 {¶ 13} Defendant challenges his conviction for possession of crack cocaine. R.C. 2925.11(A) provides that *Page 5 
"no person shall knowingly obtain, possess, or use a controlled substance." Specifically, Defendant argues that the evidence was insufficient to prove, and the jury lost its way when it found that Defendant knowingly possessed the crack cocaine found in a mailbox located just outside the front door of the apartment.
 {¶ 14} "Knowingly" is defined in R.C. 2901.22(B):
 {¶ 15} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 16} "Possession" is defined in R.C. 2925.01(K):
 {¶ 17} "Possess or possession means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."
 {¶ 18} Possession of a drug may be either actual physical possession or constructive possession. State v. Butler (1989), 42 Ohio St.3d 174. A person has constructive possession of an item when he is conscious of the presence of the object and able to exercise dominion and control over that *Page 6 
item, even if it is not within his immediate physical possession.State v. Hankerson (1982), 70 Ohio St.2d 87; State v. Wolery
(1976), 46 Ohio St.2d 316.
 {¶ 19} Police discovered a large quantity of crack cocaine in the mailbox just outside the front door of the apartment that was searched. Defendant claims that multiple people live at that apartment, that anyone and everyone has access to that mailbox because it is located outside the apartment, and that other than his physical presence when the search warrant was executed, there is no evidence linking Defendant to the drugs found in that mailbox.
 {¶ 20} In determining whether a defendant knowingly possessed a controlled substance, it is necessary to examine all of the facts and circumstances surrounding the incident. State v. Teamer, 82 Ohio St.3d 490,492, 1998-Ohio-193; State v. Pounds (June 16, 2006), Montgomery App. No. 21257, 2006-Ohio-3040.
 {¶ 21} In this case the landlord testified that Defendant paid rent for the apartment and resided there. Business papers addressed to Defendant were found inside the apartment, and mail addressed to Defendant was found in the mailbox along with the crack cocaine. That mailbox was located just outside the front door of the apartment. *Page 7 
Defendant was present at the apartment when police executed the search warrant at 9:00 p.m., and when police knocked and announced their presence and purpose, Defendant responded, "shit." Police then heard rustling around inside the apartment and they decided to make a forcible entry in order to prevent evidence from being destroyed.
 {¶ 22} The totality of these facts and circumstances, if believed, are sufficient to permit a reasonable inference that Defendant exercised dominion and control over the contents of the mailbox, and therefore that he constructively possessed the crack cocaine found therein.
 {¶ 23} In any event, Defendant was found guilty by a jury of possessing more than twenty-five grams but less than one hundred grams of crack cocaine. Defendant does not challenge the crack cocaine police found inside his apartment, only that found in his mailbox. The crack cocaine found inside Defendant's apartment, even without the quantity found in his mailbox, was sufficient to support his conviction.
 {¶ 24} The evidence, to which the parties stipulated, demonstrates that 12.01 grams was found in the kitchen cabinet, 19.88 grams was found in a bedroom dresser drawer, 4.44 grams was discovered on the kitchen floor, and 0.91 grams was found on a plate sitting on top of the microwave in the *Page 8 
kitchen. That is a total of 37.24 grams of crack cocaine, which is sufficient to support Defendant's conviction. Viewing this evidence in a light most favorable to the State, a reasonable trier of facts could find all of the essential elements of the offense proven beyond a reasonable doubt. Defendant's conviction is supported by legally sufficient evidence.
 {¶ 25} The jury did not lose its way simply because it chose to believe the State's witnesses and the State's version of these events, that Defendant resided at the apartment and knew about the drugs located there. The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to decide.
 {¶ 26} Defendant's first assignment of error is overruled.
SECOND ASSIGNMENT OF ERROR
 {¶ 27} "WHETHER TRIAL COURT ERRED BY NOT GRANTING A CONTINUANCE TO ALLOW DEFENDANT TO OBTAIN AN EXPERT ON FINGERPRINTS AND STILL ALLOWING THE PROSECUTION TO PRESENT THEIR EVIDENCE REGARDING FINGERPRINTS EVEN THOUGH THE EVIDENCE WAS NOT MADE AVAILABLE TO THE DEFENSE IN A TIMELY MANNER."
 {¶ 28} Defendant argues that the trial court abused its discretion when it refused his request to either (1) *Page 9 
exclude the State's evidence concerning fingerprints of Defendant that were found on a plate containing a piece of crack cocaine or (2) grant Defendant a continuance so that he could obtain his own expert to examine the fingerprint evidence as a sanction for the State's failure to comply with Defendant's discovery requests and failure to timely disclose the fingerprints.
 {¶ 29} Crim.R. 16(A) provides that upon written request each partyshall provide the discovery allowed by the rule. Crim.R. 16(B)(1)(d) provides that upon motion of the defendant the court shall order the prosecuting attorney to permit the defendant to inspect and copy any results or reports of scientific tests made in connection with the case, within the possession, custody or control of the State, the existence of which is known or by the exercise of due diligence may become known to the prosecuting attorney.
 {¶ 30} Crim.R. 16(B)(1)(e) provides that upon motion of the defendant the court shall order the prosecuting attorney to furnish the defendant a written list of the names and addresses of all witnesses whom the prosecuting attorney intends to call at trial. Montgomery County Common Pleas Court Local Rule 3.03 also requires the State, upon the demand of a defendant, to furnish this same discovery information to *Page 10 
the defendant.
 {¶ 31} The provisions of Crim.R. 16 and Local Rule 3.03 are mandatory. State v. Parks (August 15, 1990), Montgomery App. No. 12067. Pursuant to Crim.R. 16(E)(1), either party may move the court for a protective order restricting or limiting discovery in any manner the court may deem appropriate to serve the ends of justice. However, neither party is authorized to withhold the information required by the rule for reasons the party alone deems sufficient. Parks.
 {¶ 32} If a party fails to comply with the requirements of discovery, the court may order the party to permit the discovery, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances. Crim.R. 16(E)(3). A continuance, upon proper motion, is a favored method to avoid prejudice which may flow from a failure to provide discovery yet ensure that the charges against an accused are tried timely and fairly. Parks.
 {¶ 33} In determining whether a trial court has abused its discretion in failing to grant a motion for a continuance upon a showing that the State has failed to provide the *Page 11 
discovery required of it, this court considers (1) whether the State's failure was a willful violation of Crim.R. 16, (2) whether foreknowledge of the evidence would have benefitted the accused in the preparation of his defense, and (3) whether the accused was prejudiced by the evidence concerned. Parks.
 {¶ 34} Neither party in this case has provided this court with a reference to those portions of the record that reflect a discussion about the State's alleged failure to comply with Defendant's discovery requests and Defendant's request for exclusion of the fingerprint evidence that was not disclosed or, in the alternative, a continuance so Defendant could have his own expert examine the fingerprints. Our own examination of the trial record reveals that this matter was addressed and the trial court overruled Defendant's requests just prior to voir dire on the day trial commenced. (T. 5-7).
 {¶ 35} What the record before us discloses is that on March 22, 2005, Defendant received the "discovery packet" pursuant to Local Rule 3.03. The packet did not contain any information about fingerprint analysis. On March 24, 2005, and again on May 10, 2005, Defendant filed written requests for discovery that included specific requests for the results or reports of any scientific tests. Crim.R. 16(B)(1)(d). On May 5, 2005, the Miami Valley Regional Crime Lab and Detective *Page 12 
Anthony Morlan generated a fingerprint analysis report which concluded that latent prints found on a plate containing crack cocaine belonged to Defendant.
 {¶ 36} Trial was scheduled for October 11, 2005. On September 27, 2005, the State filed its witness list. That list did not contain the names of any fingerprint examiners. Trial was rescheduled for November 29, 2005. After Defendant waived his speedy trial rights on November 22, 2005, trial was rescheduled for February 23, 2006.
 {¶ 37} On February 17, 2006, six days before trial, the State provided Defendant with a copy of Detective Morlan's May 5, 2005 fingerprint analysis report. On February 21, 2006, two days before trial, the State provided an updated witness list, which included the name of fingerprint examiner Detective A.J. Morlan.
 {¶ 38} On the morning trial commenced, February 23, 2006, Defendant filed a motion in limine asking the trial court to either exclude the State's fingerprint evidence and report or, in the alternative, to grant Defendant a continuance so that he could have his own expert examine the fingerprints. The trial court denied Defendant's motion and both of his requests.
 {¶ 39} The State argues that no discovery violation *Page 13 
occurred because the fingerprint analysis report was faxed to it on February 15, 2006, and the State promptly turned that report over to Defendant two days later on February 17, 2006. Defendant does not dispute that factual assertion. The record also shows that the assistant who may have known about the fingerprint analysis left the prosecutor's office, and present counsel for the State who then picked up this case didn't know about any fingerprints until a later review of the discovery, and then noticed that an evidence crew at the scene had lifted prints and then called the crime lab and discovered that a fingerprint comparison had been done.
 {¶ 40} We think it likely that in the exercise of due diligence the existence of the May 5, 2005, fingerprint analysis report should have become known to the prosecutor's office, long before it was disclosed to defense counsel on February 17, 2006. At a minimum, inadvertence or negligence appears to be involved in failing to provide the fingerprint report in a more timely manner in compliance with Defendant's discovery requests. Nevertheless, in the absence of any evidence contradicting the State's explanation, and given that the failure to provide the report is excusable if the failure was inadvertent or the result of negligence, as opposed to being willful, Parks, supra, we cannot find on this record *Page 14 
that the State's failure to comply with Defendant's discovery request was a willful violation of Crim.R. 16.
 {¶ 41} As to whether foreknowledge of the fingerprint analysis report would have benefitted Defendant in the preparation of his defense, Defendant makes no specific argument or claims in that regard, other than to say in his brief that "he did seek an expert on short notice but was unable to find one." The record discloses that when defense counsel first received the fingerprint analysis report one week before trial, counsel raised the issue off the record with the trial court and expressed a desire to have Defendant's own expert examine the fingerprints. The trial court advised defense counsel to have that done before trial.
 {¶ 42} Clearly, while foreknowledge of the fingerprint report would have afforded Defendant more time to obtain his own expert to examine and compare the latent prints found on the plate containing crack cocaine with Defendant's prints, it is speculative to conclude that an independent examination would have disclosed the opposite result, that the prints are not Defendant's. This is not a case where the State failed to disclose exculpatory evidence, therefore.
 {¶ 43} Defendant had the opportunity and did cross-examine the State's fingerprint expert, and also argued to the *Page 15 
jury that there was an innocent explanation for why his fingerprints could be found on a plate inside the apartment; because he lived there. Defendant has not demonstrated that foreknowledge of the fingerprint analysis report would have benefitted him in preparing his defense.
 {¶ 44} Finally, as to whether the fingerprint evidence operated to the prejudice of Defendant, clearly it did. It established an awareness and knowledge by Defendant about drugs found inside his apartment by showing a direct, possessory interest or nexus between Defendant and a plate which contained a piece of crack cocaine. That plate was sitting on top of a microwave oven next to a set of digital scales. That evidence was compelling and important in establishing that Defendant "knowingly possessed" the cocaine police found inside his apartment, as the State pointed out in its closing argument (T. 421), and it operated to Defendant's prejudice.
 {¶ 45} The preferred method to avoid any prejudice to Defendant in this situation would have been to grant Defendant's request for a continuance. Parks. Though other continuances had been requested and granted, the reason for the request was legitimate and Defendant did not contribute to the circumstances which give rise to the request for a *Page 16 
continuance. On the other hand, the delay necessary for Defendant to have his own expert analyze the fingerprints may have been more than just nominal.
 {¶ 46} The trial court advised Defendant one week before trial to have his own expert complete any examination of the prints before trial, but that was not done. Defendant's request for a continuance was made on the morning trial commenced, after potential jurors, litigants, counsel, and witnesses had already arrived and assembled, and a continuance may have involved considerable inconvenience. A more timely request could have been made. On the record before us, we cannot conclude that the trial court abused its discretion, as that term is defined by law, State v.Adams (1980), 62 Ohio St.2d 151, when it refused to either exclude the State's fingerprint evidence or grant the continuance requested by Defendant as a sanction for the State's failure to comply with Defendant's discovery request.
 {¶ 47} Defendant's second assignment of error is overruled. The judgment of the trial court will be affirmed.
 BROGAN, J. And FAIN, J., concur. *Page 1