[Cite as *State v. Curry*, 2013-Ohio-5454.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
### MONTGOMERY   COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 25384 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2012-CR-217 |
| v. | : | |
| | : | |
| RYAN E. CURRY | : | (Criminal Appeal from |
| | : |  Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 13th day of December, 2013.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MICHELE D. PHIPPS, Atty. Reg. #0069384, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

GEORGE A. KATCHMER, Atty. Reg. #005031, 1886 Brock Road N.E., Bloomingburg, Ohio 43106
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.,

{¶ 1}    Ryan Curry appeals from his convictions for possessing over 100 grams of crack cocaine and having weapons, specifically a handgun, while under disability. Curry challenges the

trial court's decision not to suppress the crack and handgun as well as the court's decision not to suppress statements he made to police. Curry also challenges the sufficiency and weight of the evidence that supports the finding that he knowingly possessed over 100 grams of crack and that supports the finding that he knowingly had the handgun. Finding no error, we affirm.

## I. FACTS

{¶ 2}    On January 17, 2012, Detective Ryan Halburnt asked a municipal court judge for a warrant to search the Dayton duplex located at 535-537 Bolander Avenue. Halburnt submitted an affidavit in which he averred that he believed illegal drugs would be found inside. This belief was based on a confidential informant's tip and the results of Halburnt's own independent investigation. His investigation included the discovery of a complaint to the drug hotline, controlled drug buys at the duplex by the informant, the informant's identifying Curry as the seller, and surveillance of the duplex by Halburnt and Detective Patrick Bell. The judge issued the requested search warrant.

{¶ 3}    Two days later, on January 19, Halburnt, Bell, and other officers executed the warrant. On the 535 side of the duplex they found mail addressed to Curry at 535 Bolander, a handgun under a dresser in an upstairs bedroom, and a digital scale and Pyrex measuring cup, both bearing cocaine residue. On the 537 side they found bags of crack hidden in various places: three bags that together weighed 47.75 grams hidden inside a couch cushion; two bags that together weighed 27.98 grams hidden on top of an upper kitchen cabinet; and seven bags stuffed in a sock that together weighed 130.37 grams hidden in a floor vent. And they found a 0.5 gram baggie of crack sitting on top of a dresser.   They also found a digital scale covered with cocaine residue. Lastly, hidden in another floor vent, they found a black bag that contained a handgun, a

magazine, and some ammunition.

{¶ 4} At the same time that the search warrant was being executed, Curry was arrested and brought to the duplex. Detective Halburnt introduced himself and read Curry his *Miranda* rights. Curry then told Halburnt that he owned the duplex but did not live there. He admitted that the crack hidden in the couch cushion and hidden on top of the kitchen cabinet was his. But Curry denied knowing about either of the hidden guns and denied knowing about the crack hidden in the floor vent. Curry also admitted that he sometimes bought an ounce or two of powdered cocaine, "whipped it up" into crack, and sold it.

{¶ 5} Curry was charged with possessing over 100 grams of crack cocaine, a violation of R.C. 2925.11(A) and (C)(4)(f). The charge included a major-drug-offender specification. He was also charged with two counts of having weapons while under disability, both violations of R.C. 2923.13(A)(2) (prior offense of violence), one count for each handgun found. Curry moved to suppress the drugs and guns and his statements to Detective Halburnt. After a hearing at which Halburnt was the sole witness, the trial court overruled the motion. The case went to a bench trial. Detective Halburnt and Detective Bell testified for the state. Testifying for the defense was Anthony Johnson, a cousin of Curry's. Johnson said that he had put a handgun under the dresser in the upstairs bedroom on the 535 side. Also testifying for the defense was Curry himself. He said that he knew nothing about either handgun or about the crack hidden in the floor vent.

{¶ 6} The primary issues at trial concerned Curry's possession of the contraband items. On the weapons charges, the issue was whether Curry knowingly had either gun, especially the one hidden in the floor vent. On the possession charge and specification, the issue was whether Curry knowingly possessed the 130.37 grams of crack hidden in the floor vent. Curry was

charged with possessing over 100 grams of crack, 206.1 grams in all, and he admitted to possessing 75.73 grams (the total weight of the crack found in the couch cushion and on top of the kitchen cabinet). The issue on this charge was not *whether* Curry possessed crack–he made statements admitting possession–but the *quantity* he possessed. The possession of either amount constitutes a first-degree felony, R.C. 2925.11(C)(4)(e) (25-99 grams) and (C)(4)(f) (100 grams or more), but the penalties differ. The penalty for possessing 25 to 99 grams of crack is a mandatory 3- to 11-year prison term, the statutory range for a first-degree felony. R.C. 2925.11(C)(4)(e) and R.C. 2929.14(A)(1). But possession of over 100 grams means that the defendant must be classified as a major drug offender. R.C. 2925.11(C)(4)(f); R.C. 2929.01(W). The penalty for a major drug offender is the statutory maximum–a mandatory 11 years. R.C. 2925.11(C)(4)(f).

{¶ 7}     The trial court found that Curry knowingly possessed the 130.37 grams of crack found in the floor vent and classified him as a major drug offender. The court also found that Curry knowingly had the handgun found on the 537 side of the duplex. But it found that he did not knowingly have the handgun found on the 535 side. The court sentenced Curry to an aggregate of 11 years in prison.

{¶ 8}     Curry appealed.

## II. ANALYSIS

{¶ 9}     Curry presents four assignments of error for review. The first challenges the sufficiency of the evidence with respect to the finding that he knowingly possessed the 130.37 grams of crack and knowingly had the handgun. The second assignment of error challenges the weight of the evidence with respect to the same.  The third assignment of error challenges the

trial court's decision not to suppress the crack and handguns. Lastly, the fourth assignment of error challenges the trial court's decision not to suppress Curry's statements to Detective Halburnt. We consider the last two assignments of error first.

### A. The Motion to Suppress

{¶ 10}  The third assignment of error alleges that the trial court erred by overruling Curry's motion to suppress the crack and handguns found in the duplex. "Appellate review of a motion to suppress presents a mixed question of law and fact. * * * [A]n appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence * * * [and] must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." (Citations omitted.) *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

{¶ 11}  Curry contends that the search warrant issued for the duplex is invalid because the supporting affidavit does not state probable cause to believe that contraband would be found inside. In deciding to issue a search warrant, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238-239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *accord State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), at paragraph one of the syllabus (quoting the same).

{¶ 12}  The affidavit states that Detective Halburnt (the affiant) has been a Dayton police officer for about 11 years and for the last 3 of those years has been a detective in the drug unit.

The affidavit then sets forth the circumstances that led Halburnt to believe that drugs would be found in the duplex. In early December 2011, he received a tip from a confidential informant, who had given reliable information before, that crack was being sold out of the duplex. Halburnt began to investigate the tip. Checking the complaints received on the police department's drug hotline, Halburnt found an open complaint that Curry was selling crack and heroin out of the 535 side. Halburnt and Detective Bell conducted surveillance on the duplex. They watched as vehicles and people came and went in a way that was consistent with other drug houses Halburnt had investigated: a person would go into the duplex–it could be on either side–and come out again only a few minutes later. Halburnt and Bell also conducted two controlled drug buys using the informant. On December 5, 2011, Halburnt and Bell searched the informant and, finding no drugs or money, gave him an amount of money. They then watched him walk into the 537 side and walk out a couple of minutes later. The informant gave the officers the crack he had bought, and they searched him for additional drugs or money and found none. Again on January 12, 2012, after searching the informant and finding him clean, Halburnt and Bell gave him an amount of money and watched him walk into the backyard of the 535 side and return a few minutes later. The informant gave them the crack he had bought, and they searched him again and found him clean. The informant told them that he went into the 535 side through the back door and that inside he saw "several bags of crack cocaine." (*Affidavit for Search Warrant* (IV)(E)).

{¶ 13} Curry argues that the affidavit is inadequate because the informant's word is the only thing that connects him to the sale of crack. Curry contends that merely stating that an informant is reliable is not sufficient. He also contends that the absence of direct observation or a recording of the drug sale undermines the warrant. We think that the affidavit is adequate. It

offers more than just the informant's word that crack was being sold out of the duplex. The affidavit also offers Detective Halburnt's observations from his own independent investigation. What we said in a similar case also applies here:

> The affiant relied on his own knowledge to describe how the "confidential informant" entered the apartment, with money but no drugs, and shortly thereafter emerged with drugs but no money, and that it happened on two occasions. The affiant also set out his own observations of the location and the significance of those observations. These direct observations of the affiant were fully sufficient to demonstrate probable cause that drugs were being sold at the location, and would likely be found there in a subsequent search.

*State v. Harris*, 2d Dist. Montgomery No. 18913, 2002 WL 1041868, *3 (May 24, 2002). *Accord State v. Talley*, 2d Dist. Montgomery No. 24765, 2012-Ohio-4183, ¶ 10 (saying that "the controlled buys along with other surveillance strongly suggested that the house was repeatedly being used for drug transactions"). An issuing magistrate could have decided that there was a fair probability that contraband would be found in the duplex. Therefore the warrant is valid.

{¶ 14} The fourth assignment of error alleges that the trial court erred by not suppressing Curry's statements to Detective Halburnt. Curry's contention is that his statements must be excluded as "fruit of the poisonous tree," the allegedly invalid search warrant. Since the warrant is valid, it is not a "poisonous tree," so Curry's statements need not be excluded.

{¶ 15} The third and fourth assignments of error are overruled.

### B. The Sufficiency and Weight of the Evidence

{¶ 16} The first assignment of error alleges that the evidence is insufficient to find that

Curry knowingly possessed the 130.37 grams of crack or to find that he knowingly had the handgun found on the 537 side of the duplex. When the sufficiency of evidence is challenged, "'[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 118, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), at paragraph two of the syllabus.

**1.** *The sufficiency of the evidence*

{¶ 17} The drug-possession statute prohibits a person from "knowingly * * * possess[ing]" drugs. R.C. 2925.11(A). "Possess" and "possession" in this context mean "having control over a thing or substance." R.C. 2925.01(K). Control can be actual or constructive. A person has actual control over a thing that he can at the moment control and has constructive control over a thing that he cannot immediately control but has the ability to control. The person has actual possession over the former thing and constructive possession over the latter thing. The possession of drugs can be actual or constructive. *State v. Dillard*, 173 Ohio App.3d 373, 2007-Ohio-5651, 878 N.E.2d 694, ¶ 53 (2d Dist.). When Curry was arrested, the 130.37 grams of crack was not in his immediate control, so the question is whether he constructively possessed it.

{¶ 18} To constructively possess drugs, a person must be able to exercise "'dominion and control'" over them, "'even if [they] [were] not within his immediate physical possession.'" *Id.*, quoting *State v. Mabry*, 2d Dist. Montgomery No. 21569, 2007-Ohio-1895, ¶ 18. Constructive possession of drugs may be inferred from "the surrounding facts and circumstances, including the defendant's actions." *State v. Pilgrim*, 184 Ohio App.3d 675, 2009-Ohio-5357, 922

N.E.2d 248, ¶ 28 (10th Dist.). The Sixth Circuit Court of Appeals has said, concerning the possession of firearms, that "[p]roof that 'the person has dominion over the premises where the firearm is located' is sufficient to establish constructive possession." *United States v. Kincaide*, 145 F.3d 771, 782 (6th Cir.1998), quoting *United States v. Clemis*, 11 F.3d 597, 601 (6th Cir.1993). Also, "ownership need not be proven to establish constructive possession." *State v. Fry*, 9th Dist. Summit No. 23211, 2007-Ohio-3240, ¶ 47. The key is control.

{¶ 19} But proving dominion and control is not enough. By statute, possession of drugs "may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). It must also be proved that the drugs were possessed knowingly. "A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). *See also* R.C. 2901.21(D)(1) ("Possession is a voluntary act if the possessor knowingly procured or received the thing possessed, or was aware of the possessor's control of the thing possessed for a sufficient time to have ended possession.").

{¶ 20} The evidence presented here ties Curry to both sides of the duplex. He owned the duplex. The officers testified that, though he claimed multiple residences, Curry had previously told police that he lived at 535 Bolander. And even in the weeks and months leading up to the search, Curry had used 535 Bolander as the address of his residence. Indeed, mail addressed to Curry was found in the 535 side. And based on the photographs in the record and the officers' testimony, the 535 side looked lived in–clothes, a bed, dressers, photographs, mail, food, and dishes were all inside. According to the testimony, the 535 side had utilities. Although the 537 side did not, extension cords snaked through it, and one cord went out under the back door. Also,

Detective Halburnt testified that he saw Curry access each side of the duplex. During surveillance, on January 17, 2012, Halburnt saw him come out of the 537 side, and just before executing the search warrant, on January 19, Halburnt saw Curry go into and come out of the 535 side. Moreover, Bell testified that, during their surveillance, he and Halburnt saw the van that Curry drove outside the duplex on numerous occasions. Finally, Detective Halburnt showed the informant, who made two controlled buys from the duplex, a photograph of Curry, and the informant identified Curry as the one who both times sold him the crack. From this evidence, it may be inferred that Curry had dominion and control over both sides of the duplex and its contents. *Compare Kincaide* (concluding that a rational juror, drawing all reasonable inferences in favor of the prosecution, could conclude that a defendant had dominion over an apartment and the firearms inside where there was testimony that the defendant used the apartment to process heroin and stash cocaine, and the testimony was corroborated by the physical evidence seized from the apartment).

{¶ 21}  The next issue is whether Curry was aware of the 130.37 grams of crack hidden in the floor vent. Curry admitted that he "cooked" and sold crack. He admitted that he owned the crack hidden in other places on the same side of the duplex. Also, according to the detectives' testimony and even Curry's testimony, the crack hidden in the couch cushion and the crack in the floor vent were packaged in the same material–cellophane bags. Moreover, Detective Bell testified that the shape and color of the crack found in the couch cushion and on the kitchen cabinet were very similar to that of the crack found in the floor vent:

> I just see how it's in those–the chunk form as if it came out of the Pyrex. I've seen
>
> this on numerous occasions and it matches up with the other amounts that were

recovered. Triangular shaped–a lot of them are triangular shaped chunks but they have that curved edge. All the crack looks very similar. Similar color, similar shape, all looks like it–to me, came from the bottom of a Pyrex jug and also seem to belong to a large grouping together.

(Tr. 109). From this evidence, a reasonable fact finder could have inferred, and found beyond a reasonable doubt, that Curry was aware of the 130.37 grams of crack hidden in the floor vent. The evidence is therefore sufficient to find that Curry knowingly possessed over 100 grams of crack.

{¶ 22}  The weapons-under-disability statute prohibits a person from "knowingly * * * hav[ing]" a weapon. R.C. 2923.13(A). The rules about constructive drug possession also apply to having weapons while under a disability. *See State v. Cherry*, 171 Ohio App.3d 375, 2007-Ohio-2133, 870 N.E.2d 808, ¶ 10 (2d Dist.) ("Constructive possession can be sufficient to support a charge of having weapons under disability."). Because we found above that Curry exercised dominion and control over the duplex and its contents, the issue here is whether he was aware of the handgun hidden in the floor vent on the 537 side.

{¶ 23}  We think that, viewing the evidence discussed above in a light most favorable to the prosecution, a reasonable fact finder could have inferred from the surrounding facts and circumstances, and found beyond a reasonable doubt, that Curry was aware of that handgun. Therefore the evidence is sufficient to find that he knowingly had the gun.

{¶ 24}  The first assignment of error is overruled.

## 2. *The manifest weight of the evidence*

{¶ 25}  The second assignment of error alleges that it is against the manifest weight of

the evidence to find Curry guilty of either drug possession or of having weapons while under a disability. Curry does not present a new argument supporting this assignment of error but refers to his argument supporting the first assignment of error.

{¶ 26} "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other.'" (Emphasis sic.) *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *Black's Law Dictionary* (6 Ed.1990) 1594. The test used to evaluate a manifest-weight challenge is this:

> "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."

*Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983). Here, the only evidence that supports Curry's side is Curry's own testimony. His testimony is not particularly credible and, in any event, does not weigh heavily against either of his convictions.

{¶ 27} The second assignment of error is overruled.

### III. Conclusion

{¶ 28} We have overruled all of the assignments of error. Therefore the trial court's judgment is affirmed.

. . . . . . . . . . . . .

FROELICH and WELBAUM, JJ., concur.

Copies mailed to:

Mathias H. Heck
Michele D. Phipps
George A. Katchmer
Hon. Michael Tucker