[Cite as *State v. Dominguez-Olivia*, 2026-Ohio-754.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | C.A. No. 2025-CA-21 |
| Appellee | : | |
| | : | Trial Court Case No. 2024 CR 0704 |
| v. | : | |
| | : | (Criminal Appeal from Common Pleas |
| ALAN E. DOMINGUEZ-OLIVIA | : | Court) |
| | : | |
| Appellant | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on March 6, 2026, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.


For the court,


_____
MICHAEL L. TUCKER, JUDGE

EPLEY, J., and HANSEMAN, J., concur.

JOHNNA M. SHIA, Attorney for Appellant
MEGAN A. HAMMOND, Attorney for Appellee

TUCKER, J.

{¶ 1} Defendant-appellant Alan E. Dominguez-Oliva[1] appeals from his convictions after a jury found him guilty of one count of possession of a fentanyl-related compound and one count of aggravated possession of drugs. Dominguez-Oliva claims the trial court erred by failing to dismiss his charges on the grounds that he was not afforded his statutory and constitutional rights to a speedy trial. He further claims he was denied due process of law. Finally, he claims his convictions are not supported by sufficient evidence and are otherwise against the manifest weight of the evidence. For the reasons set forth below, we affirm.

## I.        Factual and Procedural History

{¶ 2} On May 18, 2022, multiple Ohio State Highway Patrol troopers were involved in a prolonged high-speed chase with a vehicle that traveled on both the interstate and surface streets. The troopers were eventually able to damage the vehicle's tires by deploying spike strips in its path of travel. Despite this, the pursuit continued until the troopers utilized their cruisers to bump into, and ultimately box in, the vehicle.

{¶ 3} After the vehicle was stopped, the troopers approached the driver, later identified as Dominguez-Oliva, and observed him attempting to swallow pills. Dominguez-Oliva refused to comply with the troopers' orders to exit the vehicle, and a struggle ensued

---

[1] The trial court, upon noting the record incorrectly identified the defendant-appellant as Dominguez-Olivia rather than Dominguez-Oliva, filed an entry in January 2025 ordering correction of the record. Despite the order, the pleadings subsequently filed by trial counsel improperly identified him as "Dominguez," while the pleadings filed by appellate counsel incorrectly identified him as Dominguez-Olivia. Thus, the appellate caption is incorrect.

before he was taken into custody.   Dominguez-Oliva was transported to a local hospital for medical treatment.   Due to a mistake by hospital security, he was discharged without notification to law enforcement.

{¶ 4} On May 31, 2022, Dominguez-Oliva was charged by indictment with assault, failure to comply, and felonious assault on a peace officer.   A warrant on indictment was issued; however, Dominguez-Oliva remained at large until he was located and arrested in Illinois on August 11, 2024.   The charges in the 2022 indictment were tried on January 13, 2025, and are not part of the pending appeal.

{¶ 5} The indictment in the instant case was filed on December 20, 2024, after Dominguez-Oliva was returned to the State of Ohio and prior to his jury trial on the first indictment.   The indictment charged him with aggravated possession of drugs and possession of a fentanyl-related compound, with the drugs at issue being found on May 18, 2022 in Dominguez-Oliva's vehicle.   However, the seized items were not confirmed to be illegal drugs until the Ohio State Highway Patrol Crime Laboratory issued a report on November 9, 2022.

{¶ 6} Dominguez-Oliva filed a motion to dismiss in which he claimed the State violated his right to a speedy trial and his right to due process.   The motion was denied, and the matter proceeded to a jury trial.   After the jury found him guilty on all charges, the trial court sentenced him appropriately.

{¶ 7} Dominguez-Oliva appeals.

## II.     Speedy Trial

{¶ 8} The first and second assignments of error state as follows:

DOMINGUEZ-OLIVIA'S [SIC] STATUTORY SPEEDY TRIAL RIGHTS WERE
VIOLATED.

3

DOMINGUEZ-OLIVIA'S [SIC] CONSTITUTIONAL RIGHT TO A SPEEDY TRIAL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND BY SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION WAS VIOLATED.

{¶ 9} Criminal defendants are guaranteed the right to a speedy trial by both the Sixth and Fourteenth Amendments to the United States Constitution as well as by Article 1, Section 10 of the Ohio Constitution. *State v. Knott*, 2024-Ohio-2289, ¶ 18 (2d Dist.), citing *State v. O'Brien*, 34 Ohio St.3d 7, 8 (1987). "The constitutional right to a speedy trial is also statutorily enforced in Ohio by the provisions of R.C. 2945.71 et seq." *Id.*, citing *State v. Adams*, 43 Ohio St.3d 67, 68 (1989). The rights under R.C. 2945.71 include a felony defendant's right to be brought to trial within 270 days after being arrested. R.C. 2945.71(C)(2).

{¶ 10} Dominguez-Oliva first claims his statutory right to a speedy trial was violated because the State was required, but failed, to bring him to trial within 270 days of his May 2022 arrest. We disagree.

{¶ 11} In *State v. Taylor*, 2021-Ohio-2701 (2d Dist.), we addressed this identical issue and fact pattern. In *Taylor*, the defendant was initially charged with two misdemeanor drug offenses following a traffic accident. *Id.* at ¶ 2. After a lab analysis of the suspected drugs, he was subsequently indicted on a separate felony cocaine possession charge. *Id.* at ¶ 3. Taylor filed a motion to dismiss asserting a statutory speedy trial violation. *Id.* The trial court denied the motion, and we affirmed. In doing so, we stated:

Under R.C. 2945.71(C)(2), a defendant facing a felony charge must be brought to trial within 270 days of the commencement of the case, subject to

4

any tolling provisions set forth in R.C. 2945.72. A criminal case is commenced on the date an indictment is returned, a bill of information is filed, a warrantless arrest is made, or a warrant, summons, or citation is issued, whichever first occurs. R.C. 2901.13(E). Thus, the dispositive issue is when the case for possession of cocaine commenced – on March 1, 2019 (the date the misdemeanor citations were issued) or on January 17, 2020 (the date of the indictment for cocaine possession). We conclude that the cocaine possession case commenced, and thus the speedy trial count began, on January 17, 2020. Given this, Taylor's statutory speedy trial rights were not violated.

In *State v. Adams*, [43 Ohio St.3d 67 (1989)], the Ohio Supreme Court concluded that, when one case is commenced and thereafter a second case is commenced, the second case is subject to the statutory speedy trial limitation of the first case when the cases "arise from the same facts * * * and the state knows of such facts at the time of the initial [commencement] * * *." *Adams* at 68. In *State v. Baker*, 78 Ohio St.3d 108, 676 N.E.2d 883, the Supreme Court again reviewed the statutory speedy trial implications of separately-commenced cases arising from the same event. This review resulted in the conclusion that when a second case arises from the same events as the initial case, there are two scenarios that exempt the State from the statutory speedy trial limit of the first case. The two situations are (1) the second case, though having the same genesis as the first case, "arise[s] from facts different from the original charge[s]," or (2) "the state did not know of these facts at the time of the [commencement] of the initial [case.]" *Id.* at

5

syllabus. Under either circumstance, the speedy trial time begins to run upon commencement (by indictment or otherwise) of the second case. *Id.* at 112.

In *State v. Dalton*, 2d Dist. Greene No. 2003-CA-96, 2004-Ohio-3575, we applied *Baker* to facts relevant to the pending analysis. Dalton was arrested for rape. A bag containing a white powder was discovered on Dalton's person upon his arrest. Several hours after the arrest, the police searched Dalton's vehicle pursuant to a search warrant. The search resulted in the discovery of "several pills, glassware, and chemicals that [the police] believed were contraband." *Id.* at ¶ 5. The collected items were sent to a lab for analysis. The analysis later revealed that the white powder was methamphetamine, that one of the pills was hydrocodone, and that the chemicals were used in the manufacture of methamphetamine.

While the lab results were pending, Dalton was indicted for rape and related charges. Over six months later, Dalton was indicted on three drug counts: two counts of aggravated possession of drugs (the methamphetamine and the hydrocodone) and one count of illegal possession of chemicals for the manufacture of drugs. Dalton moved to dismiss the drug offenses, asserting that the speedy trial calculation on these counts "should run from the date of the rape indictment because [the drug counts] arose from the same factual circumstances as the charges filed in the original indictment." *Id.* at ¶ 10. We disagreed, explaining that the facts (the lab results) supporting the drug counts "were not known to the State until after the initial indictment * * * [thus] * * * pursuant to *Baker*, the speedy trial timetable [did] not run from the [rape] indictment date." *Id.* at ¶ 13. We further explained that, although the drug-

6

related indictment occurred approximately five months after the State received the lab results, this, under *Baker*, was "irrelevant" to the beginning date of the speedy trial count because, under R.C. 2901.13(E), the drug counts were commenced on the date these counts were indicted. *Id*. at ¶ 14. We have similarly held that when a person is initially charged with a driving under the influence offense (OVI), and, after the State's receipt of a lab result reflecting a prohibited concentration of alcohol, the person is then charged with a prohibited concentration OVI, the second charge is subject to a new speedy trial clock. *See State v. Lekan*, 2d Dist. Montgomery No. 16108, 1997 WL 351287 (June 27, 2997); *State v. Cantrell*, 2d Dist. Clark No. 2000-CA-95, 2001 WL 1018234 (Sept. 7, 2001). The rationale for these decisions was that, since the prohibited concentration offenses were dependent upon lab results, the State did not know the facts of the offenses until the lab results became available. *Lekan*; *Cantrell*.

Based upon *Baker*, and our case law applying *Baker* in analogous circumstances, the speedy trial time in Taylor's cocaine possession case began on January 17, 2020, the date of the cocaine possession indictment. *Id*. at ¶ 7-11.

{¶ 12} In this case, Dominguez-Oliva was originally indicted for failure to comply, assault, and felonious assault. At that time, the lab analysis of the drugs found in Dominguez-Oliva's vehicle had not been completed, and he was not indicted on the felony drug charges until after the lab analysis confirmed the illegal nature of the drugs. Under our analysis in *Taylor*, the speedy trial time did not begin to run until the filing of that indictment on December 20, 2024. The matter was tried to a jury on May 5, 2025.

7

{¶ 13} There was no statutory speedy trial violation on this record. Further, Dominguez-Oliva has not demonstrated a constitutional speedy trial violation because he has not claimed, or demonstrated, that the four-month period between indictment and trial was unreasonable or that he suffered any prejudice therefrom.

{¶ 14} The first and second assignments of error are overruled.

### III. Due Process

{¶ 15} The third assignment of error is as follows:

DOMINGUEZ-OLIVIA'S [SIC] CONSTITUTIONAL RIGHT TO DUE PROCESS OF LAW UNDER SECTION 16, ARTICLE I, OF THE OHIO CONSTITUTION AND THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WAS VIOLATED.

{¶ 16} Dominguez-Oliva contends that he was denied due process of law because of the "State's two-year delay in bringing these additional drug offenses."

{¶ 17} Delay between a defendant's involvement in alleged criminal conduct and an indictment involving such conduct may deprive a defendant of his constitutionally protected due process rights. *State v. Luck*, 15 Ohio St.3d 150 (1984), paragraph two of the syllabus. However, "preindictment delay violates due process only when it is unjustifiable and causes actual prejudice." *State v. Jones*, 2016-Ohio-5105, ¶ 12. A defendant has the initial burden to present evidence of actual prejudice in order to demonstrate that he was deprived of his due process rights. *Id.* at ¶ 13, citing *State v. Whiting*, 84 Ohio St.3d 215, 217 (1998).

{¶ 18} Determining "'actual prejudice' involves 'a delicate judgment based on the circumstances of each case.'" *State v. Walls*, 2002-Ohio-5059, ¶ 52, quoting *United States v. Marion*, 404 U.S. 307, 325 (1971). "In making this assessment, courts are to consider the evidence as it exists when the indictment is filed and the prejudice the defendant will

8

suffer at trial due to the delay." *Id.*, citing *State v. Luck*, 15 Ohio St.3d 150, 154 (1984), citing *Marion* at 326. "'Actual prejudice exists when missing evidence or unavailable testimony, identified by the defendant and relevant to the defense, would minimize or eliminate the impact of the state's evidence and bolster the defense.'" *State v. Bourn*, 2022-Ohio-4321, ¶ 17, quoting *State v. Jones*, 2016-Ohio-5105, ¶ 28.

{¶ 19} We conclude that Dominguez-Oliva has failed to establish any "actual prejudice" resulting from the delay between his arrest and subsequent indictment. Simply put, he has failed to suggest any evidence of prejudice such as the death of a key witness, lost evidence, or faded memories resulting from the State's delay in indicting him.

{¶ 20} The third assignment of error is overruled.

### IV. Sufficiency and Manifest Weight

{¶ 21} The fourth assignment of error states as follows:

THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT AND AGAINST THE MANIFEST WEIGHT TO SUSTAIN DOMINGUEZ-OLIVIA'S [SIC] CONVICTIONS.

{¶ 22} Dominguez-Oliva claims the State failed to present evidence sufficient to support his convictions and that the convictions are otherwise against the manifest weight of the evidence.

{¶ 23} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Marshall*, 2010-Ohio-5160, ¶ 52 (2d Dist.), quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in the light most favorable to the State,

9

any rational trier of fact could have found the crime's essential elements proven beyond a reasonable doubt. *Id.*

**{¶ 24}** When an appellate court reviews whether a conviction is against the manifest weight of the evidence, "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A case should not be reversed as being against the manifest weight of the evidence except "'in the exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*

**{¶ 25}** "Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." (Citations omitted.) *State v. McCrary*, 2011-Ohio-3161 ¶ 11 (10th Dist.). As a result, a determination that a conviction is supported by the weight of the evidence will also be dispositive of sufficiency. *State v. Farra*, 2022-Ohio-1421, ¶ 50 (2d Dist.).

**{¶ 26}** Dominguez-Oliva first challenges his convictions by arguing that the State failed to prove that he was the driver of the vehicle during the high-speed pursuit. We disagree.

**{¶ 27}** The record reflects there was only one occupant, the driver, in the vehicle at the time of the pursuit and stop. The troopers confirmed that the vehicle was registered to Dominguez-Oliva. The troopers also reviewed a picture of the Illinois driver's license for Dominguez-Oliva and determined that it matched the driver of the vehicle. A search of the

10

vehicle revealed a brown paper bag that contained both methamphetamine as well as a debit card with the name "Alan Dominguez." Finally, the two troopers who testified at trial identified Dominguez-Oliva as the person in the vehicle. We find nothing in this record to rebut the above evidence and conclude that it was sufficient to prove identity.

{¶ 28} Dominguez-Oliva next claims that the State failed to prove that he had possession of any of the drugs found in the vehicle. Specifically, he contends the State's evidence was insufficient to demonstrate that he knowingly possessed the drugs because no DNA or fingerprint evidence tied him to the drugs and no one saw him place the drugs in the vehicle.

{¶ 29} Possession of a drug may be either actual physical possession or constructive possession. *State v. Mabry*, 2007-Ohio-1895, ¶ 18 (2d Dist.). "'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). "A person has constructive possession of an item when he is conscious of the presence of the object and able to exercise dominion and control over that item, even if it is not within his immediate physical possession." (Citations omitted.) *Mabry* at ¶ 18. "Establishment of ownership is not required." *State v. Rastbichler*, 2014-Ohio-628, ¶ 33 (2d Dist.). In determining whether an individual possessed an item, it is necessary to consider all of the facts and circumstances surrounding the incident. *Mabry* at ¶ 20.

{¶ 30} Again, the record shows that Dominguez-Oliva was the registered owner and sole occupant of the involved vehicle. The methamphetamine was located in a brown bag that also contained a debit card with the name Alan Dominguez on it. The evidence demonstrates that the troopers found and retrieved 451 blue pills that were scattered

11

throughout the vehicle and later determined to be contraband. The troopers observed Dominguez-Oliva shoving a portion of those pills into his mouth so fast that they were "cascading" out of the corners of his mouth. Based upon this evidence, we conclude that a reasonable juror could find that Dominguez-Oliva possessed the drugs found in his vehicle.

{¶ 31} Finally, Dominguez-Oliva claims the State failed to prove that the pills were fentanyl "with a weight equaling or exceeding 20 grams." In support, he notes that only a small number of the seized pills were tested in a laboratory.

{¶ 32} The record demonstrates that the troopers sent the pills to the Ohio State Highway Patrol Crime Laboratory for testing. Emily Hartsell, a criminalist in the drug chemistry section of the Crime Laboratory, testified at trial that she received 451 round blue pills. She testified that each pill had the imprint "M30." She further testified that she tested four of the pills and determined they were fentanyl and that the total weight of the fentanyl pills was over 20 grams.

{¶ 33} The record supports Dominguez-Oliva's claim that only a few of the pills recovered from his vehicle were subjected to laboratory testing. However, this "random-sampling" method of testing drugs has been upheld by Ohio courts. *State v. Samatar*, 2003-Ohio-1639, ¶ 81 (10th Dist.); *State v. Mattox*, 13 Ohio App.3d 52, 53 (2d Dist. 1983). "These cases hold that the random-sampling method of testing creates a reasonable inference that all similar contraband contains the same controlled substance as that tested, at least when the contraband is recovered together and similarly packaged. Accordingly, evidence of the random-sampling method is sufficient as a matter of law to support a determination that the entire substance recovered together and similarly packaged is the same controlled substance as that tested." *Id.*

12

**{¶ 34}** We conclude that the State presented evidence sufficient for a reasonable juror to find that Dominguez-Oliva possessed fentanyl in an amount commensurate with a first-degree felony.

**{¶ 35}** Based upon the record before us, we conclude that the State presented evidence sufficient to support the convictions for drug possession and that those convictions are not otherwise against the weight of the evidence.

**{¶ 36}** The fourth assignment of error is overruled.

### V.　Conclusion

**{¶ 37}** All of the assignments of error asserted by Dominguez-Oliva being overruled, we affirm the judgment of the trial court.

. . . . . . . . . . . . .

EPLEY, J., and HANSEMAN, J., concur.